FILED

2012 AUG 17  PM 4: 17

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   KERI CURTIS AXEL (Cal. State Bar No.: 186847)
4  Assistant United States Attorney
   Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-5421
7       Facsimile: (213) 894-6269
        E-mail: keri.axel@usdoj.gov
8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
9

10

11              UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,     ) CR No. _____ C R 1 2 - 0 7 8 8
                                  )
14               Plaintiff,       ) PLEA AGREEMENT FOR DEFENDANT
                                  ) WAZANA BROTHERS INTERNATIONAL,
15               v.               ) INC.
                                  )
16  WAZANA BROTHERS               )
    INTERNATIONAL, INC.,          )
17                                )
                                  )
18               Defendant.       )
                                  )
19  _____

20       1.   This constitutes the plea agreement ("Agreement")

21  between WAZANA BROTHERS INTERNATIONAL, INC., doing business as

22  Micro Solutions Enterprises ("defendant"), and the United States

23  Attorney's Office for the Central District of California ("the

24  USAO") in the investigation of defendant for conduct during,

25  relating to, and pertaining to the Department of Homeland

26  Security's Form I-9 inspection/audit of defendant from April 19,

27  2007 through February 7, 2008, as further described in Exhibit A

28  to this Agreement (the "Investigated Conduct").  This Agreement



1  is limited to the USAO and cannot bind any other federal, state,
2  local, or foreign prosecuting, enforcement, administrative, or
3  regulatory authorities.

4     2.   In consideration of the USAO's promises, as set forth in
5  paragraph 19, defendant knowingly, voluntarily, and with the
6  advice of counsel agrees that, at the earliest opportunity
7  requested by the USAO and provided by the Court, it shall appear
8  and, through an appropriate authorized representative, plead
9  guilty to a criminal information in the form attached to this
10 Agreement as Exhibit B or a substantially similar form, which
11 charges defendant with one count of violating 8 U.S.C.
12 §§ 1324a(a)(2), (f)(1), Continuing Employment of Unauthorized
13 Aliens, and pay a criminal fine of $1000 per unauthorized alien
14 (for a total of $55,000) at or before the time of sentencing,
15 and, prior to the entry of defendant's guilty plea, resolve the
16 pending investigation by the Department of Homeland Security,
17 Immigrations & Customs Enforcement by paying civil fines of
18 $212,601 in accordance with the terms set forth in Exhibit F.

## NATURE OF THE OFFENSE

20     3.   Defendant understands that for defendant to be guilty of
21 the crime charged in count one of the Information, that is, a
22 violation of Title 8, United States Code, Section 1324a(a)(2),
23 the following must be true: (1) defendant hired for employment an
24 alien (that is, a person who is not a natural-born or naturalized
25 citizen, or a national, of the United States); (2) defendant knew
26 that the alien was or had become an unauthorized alien with
27 respect to that employment; and (3) defendant continued to employ
28 that alien in the United States.

2



1     4.   In addition, to be subject to the criminal penalties
2 provided by Title 8, United States Code, Section 1324a(f)(1),
3 defendant must have engaged in a pattern or practice of
4 violations of 8 U.S.C. § 1324a(a)(2).

### PENALTIES

6     5.   Defendant understands that the statutory maximum
7 sentence that the Court can impose for an organization's
8 violation of Title 8, United States Code, Section 1324a(a)(2),
9 (f)(1) is: 5 years probation (pursuant to 18 U.S.C.
10 § 3561(c)(1)); a fine of $3,000 for each unauthorized alien with
11 respect to whom such a violation occurs; and a mandatory special
12 assessment of $25.

13     6.   Defendant understands, therefore, that the total maximum
14 sentence for all offenses to which defendant is pleading guilty
15 is: 5 years probation; a fine of $165,000 (based on the parties'
16 stipulation that the total number of unauthorized aliens involved
17 in the charged offense is 55); and a mandatory special assessment
18 of $25.

19     7.   Defendant understands that the conviction in this case
20 may subject defendant to various other collateral consequences,
21 including but not limited to federal debarment and revocation of
22 federal, state, or municipal license(s). Defendant understands
23 and agrees that unanticipated collateral consequences will not
24 serve as grounds to withdraw defendant's guilty plea.

### FACTUAL BASIS

26     8.   Defendant admits that defendant is, in fact, guilty of
27 the offense to which defendant is agreeing to plead guilty.
28 Defendant and the USAO agree that, had the case gone to trial,

3



1  the United States would have presented evidence sufficient to
2  prove the facts set forth in Exhibit A.  Defendant and the USAO
3  agree further that the statement of facts in Exhibit A is
4  sufficient to support a plea of guilty to the charge described in
5  this Agreement but is not meant to be a complete recitation of
6  all facts relevant to the underlying criminal conduct or all
7  facts known to either party that relate to that conduct.

8                              SENTENCING

9       9.    Defendant and the USAO agree that, for the charged
10  offense, a Class B misdemeanor, the United States Sentencing
11  Guidelines ("U.S.S.G.") do not apply.  U.S.S.G. §1B1.9.
12  Defendant understands that in determining defendant's sentence
13  the Court is required to consider the sentencing factors set
14  forth in 18 U.S.C. § 3553(a), and is free to exercise its
15  discretion to impose any sentence it finds appropriate up to the
16  maximum set by statute for the crimes of conviction.

17      10.   Defendant and the USAO agree that the appropriate
18  disposition of this case is, and agree jointly to recommend that
19  the Court impose, the following sentence:

20           a) Defendant shall pay to the United States a criminal
21      fine of $1000 per unauthorized alien, for a total of
22      $55,000, the entire amount of which defendant agrees to pay
23      by the time of sentencing;

24           b) Defendant shall be ordered to serve a term of 36
25      months probation, under the following terms and conditions:

26               (i)   Defendant shall comply with the rules and
27           regulations of the United States Probation Office and
28           General Order 318, including, but not limited to, the

                                  4



1      condition that defendant shall not commit another

2      federal, state or local crime;

3      (ii) Defendant shall notify its officers, Human

4      Resources employees, and any managers involved in the

5      hiring and/or termination of employees of its criminal

6      behavior and remedial actions, by providing to them

7      copies of the Exhibit A statement of facts and the

8      Exhibit C Compliance and Monitoring Program ("CMP").

9      For a period of at least 36 months, defendant shall

10     also post, in areas frequented by and visible to its

11     employees, copies of the Employee Disclosure Statement

12     attached to Exhibit C;

13     (iii) Defendant shall implement and continuously

14     maintain, for the 36-month probationary period, the

15     CMP;

16     (iv) Every six months during the term of

17     defendant's probation, defendant shall provide to the

18     USAO, the Department of Homeland Security, and the

19     Probation Officer reports in which it describes the

20     defendant's progress in implementing the CMP set forth

21     in Exhibit C;

22     (v) Defendant shall notify the USAO and the

23     Probation Officer immediately upon learning of the

24     commencement or any bankruptcy proceeding, major civil

25     litigation, criminal prosecution, or administrative

26     proceeding against defendant, or any investigation or

27     formal inquiry by government authorities regarding

28     defendant;



1            (vi) Defendant shall submit to (A) a reasonable
2       number of regular or unannounced examinations of its
3       Forms I-9 and related documents at its business
4       premises by the Probation Officer and/or the Department
5       of Homeland Security and (B) appropriate questioning of
6       knowledgeable individuals within the organization
7       concerning the Forms I-9 and compliance procedures.
8       11. Defendant understands and agrees that the Court's
9   decision to impose a sentence other than the one recommended by
10  the parties in paragraph 10, including the imposition of a longer
11  term of probation or additional terms and conditions of
12  probation, will not void this Agreement.
13                  WAIVER OF CONSTITUTIONAL RIGHTS
14      12.  Defendant understands that by pleading guilty,
15  defendant gives up the following rights:
16          a) The right to persist in a plea of not guilty.
17          b) The right to a speedy and public trial by jury.
18          c) The right to be presumed innocent and to have the
19  burden of proof placed on the government to prove defendant
20  guilty beyond a reasonable doubt.
21          d) The right to confront and cross-examine witnesses
22  against defendant.
23          e) The right to testify and to present evidence in
24  opposition to the charges, including the right to compel the
25  attendance of witnesses to testify.
26          f) Any and all rights to pursue any affirmative
27  defenses, Fourth Amendment claims, and other pretrial motions
28  that have been filed or could be filed.

                              6



1

### WAIVER OF APPEAL OF CONVICTION

2      13.   Defendant understands that, with the exception of an

3  appeal based on a claim that defendant's guilty plea was

4  involuntary, by pleading guilty defendant is waiving and giving

5  up any right to appeal defendant's convictions on the offenses to

6  which defendant is pleading guilty.

7

### WAIVER OF STATUTE OF LIMITATIONS

8      14.   Having been fully advised by defendant's attorney

9  regarding application of the statute of limitations to the

10 offense to which defendant is pleading guilty, defendant hereby

11 knowingly, voluntarily, and intelligently waives, relinquishes,

12 and gives up: (a) any right that defendant might have not to be

13 prosecuted for the offense to which defendant is pleading guilty

14 because of the expiration of the statute of limitations for that

15 offense prior to the filing of the information alleging that

16 offense; and (b) any defense, claim, or argument defendant could

17 raise or assert that prosecution of that offense to which

18 defendant is pleading guilty is barred by the expiration of the

19 applicable statute of limitations, pre-indictment delay, or any

20 speedy trial violation.

21

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

22     15.   Defendant gives up the right to appeal all of the

23 following: (a) the procedures and calculations used to determine

24 and impose any portion of the sentence; (b) the fine imposed by

25 the Court, provided it is within the statutory maximum; (c) the

26 term of probation imposed by the Court, provided it is within the

27 statutory maximum for 55 unauthorized aliens; and (d) the terms

28



1 and conditions of probation to which the defendant has stipulated
2 and agreed as set forth in paragraph 10 above.

3     16. Defendant also gives up any right to bring a post-
4 conviction collateral attack on the conviction or sentence,
5 except a post-conviction collateral attack based on a claim of
6 ineffective assistance of counsel, a claim of newly discovered
7 evidence, or an explicitly retroactive change in the applicable
8 sentencing statutes, or statutes of conviction.

9     17. The USAO agrees that, provided (a) all portions of the
10 sentence are at or below the statutory maximum specified above
11 and (b) the Court imposes a term of probation of no less than 24
12 months that includes the terms and conditions of probation set
13 forth in paragraph 10, the USAO gives up its right to appeal any
14 portion of the sentence.

15 DEFENDANT'S OBLIGATIONS

16     18. Defendant knowingly, voluntarily, and with the advice
17 of counsel agrees to:

18     a) Give up any right to indictment by grand jury;
19 defendant will document its waiver of indictment by delivering to
20 the USAO, concurrently with the execution of this Agreement, a
21 duly authorized and executed waiver of indictment in the form
22 attached hereto as Exhibit D.

23     b) Appear and plead guilty as provided by paragraph 2
24 above.

25     c) Enter its guilty plea before the Court, through an
26 officer, agent, or attorney authorized to so act by a duly-
27 enacted resolution of defendant's Board of Directors, in the form
28 attached hereto as Exhibit E.

8



1        d) Make admissions of guilt consistent with the facts
2  set forth in Exhibit A, and not contest facts agreed to in this
3  Agreement.

4        e) Not make, through any counsel, representative,
5  agent, executive, or officer with authority to speak on behalf of
6  defendant, any public statement that in whole or in part
7  contradicts any material fact set forth in Exhibit A.  Any such
8  contradictory public statement by defendant shall constitute a
9  breach of this Agreement as governed by paragraphs 23 and 24 of
10  this Agreement, and defendant shall thereafter be subject to
11  prosecution pursuant to the terms of the Agreement.

12        f) Abide by all agreements regarding sentencing
13  contained in this Agreement.

14        g) Appear for all court appearances, and obey any other
15  ongoing court orders in this matter.

16        h) Not commit any crime.

17        i) Be truthful at all times with Pretrial Services, the
18  United States Probation Office, and the Court.

19        j) Pay a criminal fine of $55,000 and the applicable
20  special assessment at the time of sentencing.

21        k) Pay civil fines in the amount of $212,608 pursuant
22  to the offer from the Department of Homeland Security (attached
23  hereto as Exhibit F) prior to the entry of the defendant's plea.

24        k) Not require or request notice of any Form I-9
25  inspection during the term of probation and submit to (A) a
26  reasonable number of regular or unannounced examinations of its
27  Forms I-9 and related documents at its business premises by the
28  Probation Officer and/or the Department of Homeland Security and

9



1  (B) appropriate interrogation of knowledgeable individuals
2  employed by defendant concerning its Forms I-9 and compliance
3  procedures.

4              THE USAO'S OBLIGATIONS

5      19.   The USAO agrees to:

6           a) Not contest facts agreed to in this Agreement.

7           b) Abide by all agreements regarding sentencing
8  contained in this Agreement.

9           c) Except for criminal tax violations (including
10 conspiracy to commit such violations chargeable under 18 U.S.C.
11 § 371), not further criminally prosecute defendant for violations
12 of the immigration laws or for obstruction of justice arising out
13 of the Investigated Conduct.  Defendant understands that the USAO
14 is free to criminally prosecute defendant for any unlawful past
15 conduct unrelated to the Investigated Conduct, or for any
16 unlawful conduct that occurs after the date of this Agreement.
17 Defendant agrees that at the time of sentencing the Court may
18 consider the uncharged conduct in determining the sentence to be
19 imposed after consideration of the sentencing factors under 18
20 U.S.C. § 3553(a).

21           d) The USAO will not bring criminal charges against any
22 current or former director, officer, or employee of defendant for
23 any act or offense committed before the date of this Agreement
24 that was undertaken in furtherance of the Investigated Conduct,
25 except that the protections in this paragraph shall not apply to
26 Yoel Wazana for any violation of 42 U.S.C. § 408(a)(7)(B).

27     20.   Defendant understands that the above obligations bind
28 only the USAO in accordance with the terms and conditions of this

                          10



1  Agreement, and do not apply to civil or administrative matters of
2  any kind; thus, defendant may be subject to administrative action
3  by federal or state agencies other than the USAO, and this
4  Agreement in no way controls whatever action, if any, other
5  agencies may take.  However, the USAO agrees that, if requested,
6  it will advise the appropriate officials of any governmental
7  agency considering such administrative action of this Agreement
8  as a matter for that agency to consider before determining what
9  administrative action, if any, to take.

10                    RESULT OF WITHDRAWAL OF GUILTY PLEA

11      21.  Defendant agrees that if, after entering a guilty plea
12  pursuant to this Agreement, defendant seeks to withdraw and
13  succeeds in withdrawing defendant's guilty plea on any basis
14  other than a claim and finding that entry into this Agreement was
15  involuntary, then (a) the USAO will be relieved of all of its
16  obligations under this Agreement; and (b) should the USAO choose
17  to pursue any charge or any civil, administrative, or regulatory
18  action that was either dismissed or not filed as a result of this
19  Agreement, then (i) any applicable statute of limitations will be
20  tolled between the date of defendant's signing of this Agreement
21  and the filing commencing any such action; and (ii) defendant
22  waives and gives up all defenses based on the statute of
23  limitations, any claim of pre-indictment delay, or any speedy
24  trial claim with respect to any such action, except to the extent
25  that such defenses existed as of the date of defendant's signing
26  this Agreement.

27  / / /
28  / / /

11



1     22.  Defendant agrees that if the count of conviction is

2 vacated, reversed, or set aside, both the USAO and defendant will

3 be released from all their obligations under this Agreement.

4                         BREACH OF AGREEMENT

5     23.  Defendant agrees that if defendant, at any time after

6 the signature of this Agreement and execution of all required

7 certifications by defendant, defendant's counsel, and an

8 Assistant United States Attorney, knowingly violates or fails to

9 perform any of defendant's obligations under this Agreement ("a

10 breach"), the USAO may declare this Agreement breached.  All of

11 defendant's obligations are material, a single breach of this

12 Agreement is sufficient for the USAO to declare a breach, and

13 defendant shall not be deemed to have cured a breach without the

14 express Agreement of the USAO in writing.  If the USAO

15 determines, in good faith and in its sole discretion, that this

16 Agreement is breached, it will provide written notice to the

17 defendant of its intent to void its obligations under the

18 Agreement, and defendant has 10 days to respond in writing, after

19 which the USAO may initiate proceedings to declare a breach.  If

20 a court finds a knowing breach to have occurred, then: (a) if

21 defendant has previously entered guilty plea pursuant to this

22 Agreement, defendant will not be able to withdraw the guilty

23 plea, and (b) the USAO will be relieved of all its obligations

24 under this Agreement and may prosecute defendant for any federal

25 offense relating to the Investigated Conduct.

26     24.  Following a court's finding of a knowing breach of this

27 Agreement by defendant, should the USAO choose to pursue any

28 charge or any civil, administrative, or regulatory action that



1  was either dismissed or not filed as a result of this Agreement,
2  then:

3           a) Defendant agrees that any applicable statute of
4  limitations is tolled for the period between the date of the
5  signing of this Agreement and six (6) months after the date on
6  which a court finds that defendant has knowingly breached the
7  Agreement.

8           b) Defendant waives and gives up all defenses based on
9  the statute of limitations, any claim of pre-indictment delay, or
10 any speedy trial claim with respect to any such action, except to
11 the extent that such defenses existed as of the date of
12 defendant's signing this Agreement.

13          c) Defendant agrees that: (i) any statements made by
14 any representative of defendant on its behalf, under oath, at the
15 guilty plea hearing (if such a hearing occurred prior to the
16 breach); (ii) the Exhibit A statement of facts attached to this
17 Agreement; and (iii) any evidence derived from such statements,
18 shall be admissible against defendant in any such action against
19 defendant, and defendant waives and gives up any claim under the
20 United States Constitution, any statute, Rule 410 of the Federal
21 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
22 Procedure, or any other federal rule, that the statements or any
23 evidence derived from the statements should be suppressed or are
24 inadmissible.

25                    COURT AND PROBATION OFFICE NOT PARTIES

26     25.  Defendant understands that the Court and the United
27 States Probation Office are not parties to this Agreement and

28

13



1 need not accept any of the USAO's sentencing recommendations or
2 the parties' agreements to facts or sentencing factors.

3     26. Defendant understands that both defendant and the USAO
4 are free to: (a) supplement the facts by supplying relevant
5 information to the United States Probation Office and the Court,
6 (b) correct any and all factual misstatements relating to the
7 Court's determination of sentence, and (c) argue on appeal and
8 collateral review that the the sentence the Court chooses to
9 impose are not error, although each party agrees to maintain its
10 view that the recommended sentence in paragraph 10 is
11 appropriate. While this paragraph permits both the USAO and
12 defendant to submit full and complete factual information to the
13 United States Probation Office and the Court, even if that
14 factual information may be viewed as inconsistent with the facts
15 agreed to in this Agreement, this paragraph does not affect
16 defendant's and the USAO's obligations not to contest the facts
17 agreed to in this Agreement.

18     27. Defendant understands that even if the Court ignores
19 any sentencing recommendation, finds facts or reaches conclusions
20 different from those agreed to, and/or imposes any sentence up to
21 the maximum established by statute, defendant cannot, for that
22 reason, withdraw defendant's guilty plea, and defendant will
23 remain bound to fulfill all defendant's obligations under this
24 Agreement. Defendant understands that no one -- not the
25 prosecutor, defendant's attorney, or the Court -- can make a
26 binding prediction or promise regarding the sentence defendant
27 will receive, except that it will be within the statutory
28 maximum.

14



1

## NO ADDITIONAL AGREEMENTS

2   28.  Defendant understands that, except as set forth herein,

3  there are no promises, understandings, or agreements between the

4  USAO and defendant or defendant's attorney, and that no

5  additional promise, understanding, or agreement may be entered

6  into unless in a writing signed by all parties or on the record

7  in court.

8

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

9   29.  The parties agree that this Agreement will be

10  considered part of the record of defendant's guilty plea hearing

11  as if the entire Agreement had been read into the record of the

12  proceeding.

13

## AUTHORITY AND EFFECTIVE DATE

14   30.  The undersigned is authorized to enter this Agreement

15  on behalf of the defendant as evidenced by the Resolution of the

16  Board of Directors of defendant attached as Exhibit E hereto and

17  incorporated by reference in this Plea Agreement.

18   31.  This Agreement is effective upon signature and

19  execution of all required certifications by defendant,

20  defendant's counsel, and an Assistant United States Attorney.

21  AGREED AND ACCEPTED

22  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

23
    ANDRÉ BIROTTE JR.
24  United States Attorney

25

26  _____          8/16/2012
    KERI CURTIS AXEL                         Date
27  Assistant United States Attorney
    Major Frauds Section
28

15

1    WBI Plea Agreement (continued)

2

3

4    _____        _____
     AVI WAZANA, Chief Executive Officer      Date
5    WAZANA BROTHERS INTERNATIONAL, INC.
     Defendant
6

7

8    _____        _____
     PETER SCHEY, ESQ.                        Date
     Attorney for Defendant
9    WAZANA BROTHERS INTERNATIONAL, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    16

WBI Plea Agreement (continued)


_____
AVI WAZANA, Chief Executive Officer     Date
WAZANA BROTHERS INTERNATIONAL, INC.
Defendant


_____
PETER SCHEY, ESQ.                       Date: August 14, 2012
Attorney for Defendant
WAZANA BROTHERS INTERNATIONAL, INC.


/ / /

16

1                               CERTIFICATION OF DEFENDANT

2     In my capacity as Chief Executive Officer of WAZANA BROTHERS
3 INTERNATIONAL, INC. ("defendant"), I am authorized by defendant
4 to enter into agreements and contracts on its behalf.  Per such
5 authorization, I can represent that:

6     (1) The entire plea agreement between defendant and the
7 United States Attorney's Office (the "Agreement") has been
8 reviewed with defendant's Board of Directors, and it has been
9 carefully and thoroughly discussed with defendant's attorney.
10 Defendant understands the terms of this Agreement, and
11 voluntarily agrees to those terms.

12     (2) I am authorized to enter into this Agreement on behalf
13 of defendant and bind defendant to it.  I have obtained proper
14 written authorization to do so from the defendant's Board of
15 Directors, in the form of a resolution of defendant's Board of
16 Directors, attached as Exhibit E to the Agreement.  I understand
17 the terms of the Agreement and, on behalf of defendant,
18 voluntarily agree to them.

19     (3) The evidence concerning the Investigated Conduct and the
20 charges to which defendant will plead guilty pursuant to the
21 Agreement have been discussed with the Board of Directors, and
22 defendant's attorney has advised it of its rights, of possible
23 pretrial motions that might be filed, of possible defenses that
24 might be asserted either prior to or at trial, of the sentencing
25 factors set forth in 18 U.S.C. § 3553(a), and of the consequences
26 of entering into this Agreement.

27     (4) To my knowledge, and based on my discussions with
28 counsel and defendant's Board of Directors, no promises,

17

1  inducements, or representations of any kind have been made to
2  defendant other than those contained in this Agreement.  No one
3  has threatened or forced me in any way to enter into this
4  Agreement on defendant's behalf, and I am unaware of any force or
5  threats that have influenced defendant in any way to enter into
6  this Agreement.  Defendant is pleading guilty because it is
7  guilty of the charges and wishes to take advantage of the terms
8  of this Agreement, and not for any other reason.

9       (5) Defendant and I are satisfied with the representation of
10  defendant's attorney in this matter.

11

12  _____          _____
    AVI WAZANA                                Date
13  Authorized Representative of
    WAZANA BROTHERS INTERNATIONAL, INC.
14  Defendant

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                18

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am the attorney for WAZANA BROTHERS INTERNATIONAL, INC. ("defendant"). I have carefully and thoroughly discussed every part of this Agreement with defendant. Further, I have fully advised my client of its rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), and of the consequences of entering into this Agreement. I believe that Avi Wazana, Chief Executive of Wazana Brothers International, is duly authorized to enter into this Agreement on defendant's behalf.

To my knowledge, no promises, inducements, or representations of any kind have been made to defendant or Avi Wazana other than those contained in this Agreement; no one has threatened or forced defendant or Avi Wazana in any way to enter into this Agreement; my client's decision to enter into this Agreement is an informed and voluntary one; and the factual basis set forth in this Agreement is sufficient to support entry of guilty plea on behalf of defendant pursuant to this Agreement.

PETER SCHEY                              Date: August 14, 2012
Attorney for Defendant
WAZANA BROTHERS INTERNATIONAL, INC.

19

# Exhibit-A

**EXHIBIT A TO PLEA AGREEMENT OF
WAZANA BROTHERS INTERNATIONAL, INC.:
STATEMENT OF FACTS**

Defendant WAZANA BROTHERS INTERNATIONAL, INC. ("defendant")

represents and admits that the following facts are true:

A.    Background Re Form I-9 Inspection Law and Practices

Under the United States immigration laws, an alien, other than an alien lawfully

admitted for permanent residence, may not engage in any employment for

remuneration without specific employment authorization from the Department of

Homeland Security ("DHS") or United States Citizenship & Immigration Services

("USCIS").  The Immigration and Nationality Act requires that employees complete a

Form I-9 (Employment Eligibility Verification Form) at the time of hire.  The Form I-9

requires every employee to attest, under penalty of perjury, that he/she either is a

citizen or national of the United States, a lawful permanent resident, or an alien

authorized to work in the United States; and to submit certain proof of identity and

employment eligibility, such as an Alien Registration Card, Social Security card and/or

driver's license.  An employer is required to examine these documents and to certify,

under penalty of perjury, that he/she has examined the original documents and believes

that the employee is eligible to work in the United States.

An employer is required to retain its employees Forms I-9 for a period of three

years from the date of hire, and to present them upon request to officials of DHS. When

DHS serves an employer with a Notice of Inspection ("NOI"), the employer may be

required to produce the following documents: (1) Forms I-9 for current employees; (2)

the company's most recent payroll including names and Social Security Numbers

("SSNs") of employees and the amount of pay and tax withholding for each employee;

(3) an employee information certification list showing current employees and their dates

of hire, termination dates (if applicable), and dates of birth; and (4) Forms DE-6

(California Quarterly Wage and Withholding Report) for the most recent fiscal year.

After the employer produces the Forms I-9 and other supporting documents to

DHS, DHS agents or auditors will conduct an inspection of the Forms I-9 for compliance.

Among other things, DHS will seek to determine if the A-numbers and SSN listed on the

Forms I-9 are legitimate and, if so, whether any alien employee has appropriate work

authorization or Legal Permanent Resident status.

If DHS determines, based on its review of the Forms I-9 and supporting

documentation, that any employee is not authorized to work in the United States, DHS

will send the employer a Notice of Suspect Documents, identifying each individual who

does not appear to be legally authorized to work in the United States. Employers then

have opportunity to present additional documentation to demonstrate an employee's work

authorization. For substantive violations, or for the knowing hiring or retention of an

undocumented alien after the Form I-9 inspection, DHS has authority to fine a company.

B.     The May 2007 Form I-9 Investigation

Defendant WAZANA BROTHERS INTERNATIONAL, Inc. which operates

principally under the fictitious business name Micro Solutions Enterprises ("defendant"),

is a manufacturer of imaging supplies in Van Nuys, California.

On April 19, 2007, DHS agents served a NOI on defendant. The NOI indicated

that DHS would return in three business days to inspect the company's Forms I-9, and

requested a copy of its current payroll, an employee certification list, and copies of Forms

I-9 for current employees. Per negotiation, the inspection date was later extended to May

3, 2007. On that date, defendant's Human Resources Director provided to DHS: (1) a

certification list that purported to list all of defendant's current employees as of May 3,

2007; (2) Forms I-9 purportedly for those current employees; (3) two payrolls (these

payrolls were prepared to list only those employees who were on defendant's payroll as

of May 3, 2007; conversely, any employee who had been terminated from defendant's

payroll between April 19 and May 3 was not listed), and (4) the company's DE-6 for the

quarter ending December 31, 2006.

C.     Defendant's Employees Moved to LII

Between April 19 and May 3, 2007, before DHS returned to conduct the Form I-9

inspection, an executive of the defendant directed that production lines of defendant be

set up at the facility of another manufacturer, Laser Imaging International ("LII"), a

company with whom defendant was in discussions about a possible acquisition. The

- 3 -

executive directed that defendant's most experienced and productive employees (regardless of their immigration status) be moved to LII to staff production lines there in order to ensure a steady production of products for defendant.  Pursuant to such instruction, about 80 of defendant's employees ("moved employees") (of a total of about 700 employees) were directed to resign from defendant and go to LII, where they were rehired by a supervisor of defendant..

To carry out this relocation of a portion of defendant's production operations to LII, defendant's  production managers set up two production lines for defendant at LII. The proprietary equipment for such lines was provided and maintained by defendant, and was used by the moved employees separate and apart from the LII production lines.  The moved employees were supervised by defendant's production supervisors, and all of the propriety materials used in production on the lines was provided by defendant.

When defendant provided documents to DHS on May 3, 2007, it did not disclose, on the employee certification list or the two produced payrolls, the names of at least 53 of the 80 moved workers ("the 53 unauthorized employees m") who were producing goods for defendant but at the LII facility, and did not provide to DHS Forms I-9 for the 53 unauthorized employees.

In August 2007, defendant caused a WBI-related entity, WBI Recycling ("WBIR") to purchase LII.  After the acquisition, the defendant's lines at LII were taken down and the 53 unauthorized employees were moved back to defendant and distributed among the

- 4 -

defendant's production lines.  The 53 unauthorized employees were placed on the payroll of WBIR; were not treated as new employees; and Forms I-9 were only partially completed upon their transfer.  In bringing the 53 unauthorized employees back to work at defendant's production facility, defendant continued to employ them knowing or in reckless disregard of or deliberate indifference to their unauthorized status, and thus violated the paperwork requirements of 8 U.S.C. §1324a(b) and 8 C.F.R. § 274a.2.

In September 2007, a Special Agent of DHS requested additional documents for the ongoing Form I-9 inspection; specifically, (1) a list of employees hired and terminated by defendant since May 3, 2007, (2) Forms I-9 for employees hired by defendant since May 3, 2007; (3) an updated employee certification list, and (4) a current payroll.  On October 10, 2007, defendant's Human Resources Director provided documents in response to the Special Agent's inquiry; specifically, an employee certification list and a list of defendant's employees hired and terminated since May 3, 2007.  The certification list did not include the employees that had been put on the WBIR payroll; thus, the 53  unauthorized employees were again omitted from disclosure to DHS.

On November 2, 2007, defendant's Human Resources Director provided to DHS a current payroll, but only for defendant, not for the entity WBIR.  Thus, the 53 unauthorized employees were in fact working for defendant, they were not disclosed to DHS for a third time.

- 5 -

D.    Presentation of False Social Security Numbers

On an unknown date after April 19, 2007, an executive of defendant conducted meetings with defendant's line employees to tell them about the DHS inspection. Through a translator, the executive told the employees that: (1) DHS had come to inspect their work authorization documents; (2) that the employees needed valid documents to stay employed by defendant; (3) if the employees did not have good documents, they should get some and return, and defendant would rehire them.  From the meeting, some of the employees understood that it did not matter whether the documents that employees presented to work at defendant were their own true documents, so long as they were valid documents authorizing work in the United States.

Following this meeting, and in response to these statements, in late April 2007, two of defendant's employees, E. O. and Y. A., renounced their employment and then returned to work with documents belonging to family members (G. N. and G. M., respectively).  E. O. was hired under the name G. N. and SSN of G.N., and Y. A. was rehired under the name and SSN of G.M.; E. O. and Y. A. worked for defendant under those false names and SSNs until February 7, 2008.

The payroll that defendant produced to DHS on November 2, 2007, indicated that defendant employed G. N. and G. M., with their purportedly valid SSNs, instead of E. O. and Y. A. who, in truth and in fact, were working for defendant without authorization under false names and SSNs.

- 6 -

As a duly authorized representative for defendant WAZANA BROTHERS

INTERNATIONAL, INC., I declare that the conduct described above in Exhibit A is true

and accurate to the best of my knowledge.


_____               _8/13/12._____

AVI  WAZANA                                     Date
As Chief Executive Officer and Authorized Representative for
WAZANA BROTHERS INTERNATIONAL, INC.
Defendant

# Exhibit-B

1   **EXHIBIT B TO PLEA AGREEMENT OF**
    **WAZANA BROTHERS INTERNATIONAL, INC.:**
2              **CRIMINAL INFORMATION**

3

4

5

6

7
                    UNITED STATES DISTRICT COURT
8             FOR THE CENTRAL DISTRICT OF CALIFORNIA

9   UNITED STATES OF AMERICA,   )     CR No. 12-_____
                                )
10                Plaintiff,     )     I N F O R M A T I O N
                                )
11                  v.           )     [8 U.S.C. §§ 1324a(a)(2), (f)(1):
                                )     Continuing Employment of
12   WAZANA BROTHERS             )     Unauthorized Aliens]
     INTERNATIONAL, INC.,        )
13                               )
                  Defendant.     )
14   _____  )
                                )
15                               )

16        The United States Attorney charges:

17              [8 U.S.C. § 1324a(a)(2), (f)(1)]

18        Beginning on a date unknown, and continuing through on or

19   about November 2, 2007, in Los Angeles County, within the Central

20   District of California, defendant WAZANA BROTHERS INTERNATIONAL,

21   INC. ("defendant"), which principally does business under the

22   fictitious business name Micro Solutions Enterprises, after

23   hiring approximately 55 unauthorized aliens for employment,

24   continued to employ such aliens, knowing that such aliens were or

25   had become unauthorized with respect to such employment.

26   / / /

27   / / /

28

1       The hiring and continued employment of such unauthorized

2   aliens constituted a pattern and practice of violations of Title

3   8, United States Code, Section 1324a(a)(2).

4                             ANDRÉ BIROTTE JR.
5                             United States Attorney

6

7

8                             ROBERT E. DUGDALE
                          Assistant United States Attorney
9                             Chief, Criminal Division

10                            RICHARD A. ROBINSON
                          Assistant United States Attorney
11                            Chief, Major Frauds Section

12                            RANEE A. KATZENSTEIN
                          Assistant United States Attorney
13                            Deputy Chief, Major Frauds Section

14                            KERI CURTIS AXEL
                          Assistant United States Attorney
15                            Major Frauds Section

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit-C

EXHIBIT C

**WBI CORPORATE COMPLIANCE & MONITORING PROGRAM**

Defendant WAZANA BROTHERS INTERNATIONAL, INC. (hereinafter "WBI") hereby agrees to comply, for a period of at least 36 months, with the following Compliance and Monitoring Program ("CMP") regarding the employment authorization of its employees:

1.      The purpose of the CMP is to insure that WBI's business practices with respect to Form I-9 completion and maintenance are in full compliance with 8 U.S.C. §1324a(b) and 8 C.F.R. § 274a.2, including but not limited to (1) providing Forms I-9 to employees in a timely manner upon hire; (2) completing Forms I-9 accurately and with adequate due diligence, including the appropriate use of E-Verify; (3) ensuring that Forms I-9 are maintained and updated as required by statute and regulation.

2.      By no later than ten (10) days following sentencing, WBI will retain the services of ADP to operate its Form I-9 program.  WBI will continue to retain ADP to perform these services for the Period of probation unless WBI, the United States Probation Office ("USPO"), the United States Attorney's Office of the Central District of California ("USAO"), and the Department of Homeland Security, Immigrations & Customs Enforcement ("ICE") mutually agree in writing that for good cause WBI may use an alternative service to meet its Form I-9 obligations.

3.      Within 30 days of sentencing, ADP will conduct training of all WBI

executives and all persons employed in WBI's HR Department regarding the full scope

of WBI's responsibilities and policies relating to I-9 compliance.  WBI's immigration

counsel, Peter Schey (hereinafter "Legal Counsel"), will evaluate and monitor all

training provided to WBI officers and employees to ensure that the trainers are

qualified and that the training provided fully complies with all requirements of 8 U.S.C.

§1324a(b) and 8 C.F.R. § 274a.2 and applicable administrative and judicial decisions.

Prior to this training, ADP and Legal Counsel will interview relevant personnel in

WBI's HR Department regarding current practices and procedures dealing with hiring

and Forms I-9 preparation and maintenance.  The training will include all personnel

who participate in the hiring and/or firing of employees, including but not limited to

HR staff members, applicable executive staff, and applicable production managers.  The

training will include but not be limited to the requirements of 8 U.S.C. §1324a(b) and 8

C.F.R. § 274a.2, as well as WBI's and ADP's policies and procedures dealing with I-9

compliance and monitoring.

      4.     ADP will ensure that:

         a.     For all employees currently employed by WBI as of July 31, 2012,

that Forms I-9:  (1) been properly completed in a manner consistent with 8 U.S.C.

§1324a(b) and 8 C.F.R. § 274a.2; and (2) for such Forms I-9 that require updating,

that such Forms I-9 are updated in a timely manner.

         b.     For employees hired after July 31, 2012, that Forms I-9 are properly

completed in a manner consistent with 8 U.S.C. §1324a(b) and 8 C.F.R. § 274a.2,

including the voluntary use of E-Verify to ensure that all persons hired by WBI are authorized to be employed in the United States.

    c.    That all completed Forms I-9 are maintained for the period of time required by law and in accordance with the standards of 8 CFR 274a.2(e), (f), (g), (h), and (i), as applicable.

5.    Legal counsel will review all written procedures concerning Form I-9 completion, maintenance, and updating, including practices with regard to E-Verify, and ensure that WBI's and ADP's policies and procedures are in full compliance with the requirements of 8 U.S.C. §1324a(b) and 8 C.F.R. § 274a.2.

6.    At six month intervals during the term of WBI's probation, Legal Counsel will prepare written reports that will be submitted on each six month anniversary directly to the USPO, USAO, and ICE.  These progress reports will accurately and completely summarize the monitoring and auditing efforts undertaken during the previous six month period, including any material failure of WBI or ADP to fully implement the CMP and comply with the requirements of 8 U.S.C. §1324a(b) and 8 C.F.R. § 274a.2, and any remedial steps taken following such failure.

7.    During the term of WBI's probation, Legal Counsel and the person in charge of WBI's HR Department shall, at the request of the USPO, USAO, or ICE, promptly meet with representatives of the USPO, USAO, or ICE to review WBI's compliance with the CMP.

9.    At any meetings requested by the USPO, USAO, and/or ICE, Legal

WAZANA BROTHERS INTERNATIONAL, INC.
MICROSOLUTIONS ENTERPRISES

FORM I-9 (EMPLOYMENT AUTHORIZATION) COMPLIANCE POLICY

EMPLOYEE DISCLOSURE STATEMENT

August 10, 2012

WAZANA BROTHERS INTERNATIONAL, INC. dba Micro Solutions Enterprises
("WBI") is committed to fully complying with its obligations as they relate to the
completion and maintenance of Forms I-9 as set forth in 8 U.S.C. §1324a(b) and 8 C.F.R.
§ 274a.2.

The company has retained ADP to perform all necessary functions for WBI with regards
to the completion and maintenance of Forms I-9 and related materials.

All officers and employees of WBI must conduct themselves in accordance with this
policy.

The goals of this policy are to insure that WBI (1) is in complete compliance with all of
its I-9 obligations, and (2) does not in any way discriminate against U.S. citizens or
immigrants authorized to be employed in the implementation of this policy.

A copy of 8 C.F.R. § 274a.2 is attached as Exhibit 1. It is the policy of WBI to fully
comply with 8 C.F.R. § 274a.2 and any amendments to that section promulgated after
the adoption of this policy.

WBI officers and employees shall fully cooperate with ADP including by providing it
with all information and documents that it requires in order to implement WBI/MSE's
I-9 policy in full compliance with 8 U.S.C. §1324a(b) and 8 C.F.R. § 274a.2.

WBI officers and employees shall only provide to ADP information and documents that
are accurate to the best of WBI/MSE's officers' and employees' knowledge.

All WBI executives involving in the hiring and firing of employees, as well as all
persons employed in WBI's HR Department, must participate in training provided by
ADP regarding the full scope of WBI's responsibilities and policies relating to I-9
compliance.

Any material or deliberate failure to comply with this policy will result in disciplinary
action including possible termination.

Dated: August 10, 2012

By:     Avi Wazana, WBI CEO

# Exhibit-D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NUMBER |
|---|---|
| PLAINTIFF | |
| v. | |
| WAZANA BROTHERS INTERNATIONAL, INC. | **WAIVER OF INDICTMENT** |
| DEFENDANT. | |

I, WAZANA BROTHERS INTERNATIONAL, INC. , the above-named defendant,

who is accused of   violations of 8 U.S.C. § 1324a

being advised of the nature of the charge(s), the proposed information, and of my rights, hereby waives in open court on _____ prosecution by indictment and consent that the proceedings may be
                         *Date*
by information rather than by indictment.

_____
*Defendant*

_____
*Counsel for Defendant*

Before

CR-57 (5/00) [AO 455 Rev. 5/85]                    WAIVER OF INDICTMENT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF<br><br>v.<br><br><br>WAZANA BROTHERS INTERNATIONAL, INC.<br><br><br>DEFENDANT. | CASE NUMBER<br><br><br><br>**WAIVER OF INDICTM** |

I, WAZANA BROTHERS INTERNATIONAL, INC., the above-named defendant,

who is accused of violations of 8 U.S.C. § 1324a _____

_____

_____

_____

_____

being advised of the nature of the charge(s), the proposed information, and of my

rights, hereby waives in open court on _____ prosecution by

indictment and consent that the proceedings may be by information rather than by

indictment.

| | |
|---|---|
| | *Defendant*<br>Signed on separate page |
| | *Counsel for Defendant:* |

| Before | |
|---|---|
| | *Judicial Officer* |

# Exhibit-E

UNANIMOUS WRITTEN CONSENT OF

THE BOARD OF DIRECTORS

OF

WAZANA BROTHERS INTERNATIONAL, INC.

A California Corporation

The undersigned representing all of the duly elected members of the board of directors of Wazana Brothers International, Inc., a California corporation (the "Company"), hereby adopt the following resolutions pursuant to the Unanimous Written Consent in accordance with and pursuant to Section 307(b) of the California Corporations Code and the Corporation's Bylaws.

**WHEREAS,** the Company has been engaged in discussion with the United States Attorney's Office for the Central District of California ("USAO") regarding certain issues arising out of, in connection with, or otherwise relating to, the conduct of certain of its employees and officers;

**WHEREAS,** in order to resolve such discussions, it is proposed the Company enter into a certain plea agreement with the USAO; and

**WHEREAS,** the Company's outside counsel, Peter Schey, Esq., has advised the Company's Board of Directors (the "Board") of the Company's rights, possible defenses, and the consequences of entering into such an agreement with the Offices.

This Board hereby **RESOLVES** that:

1. The Company consents to the filing in the United States District Court for the Central District of California of an Information charging the Company with 1 count of violating 8 U.S.C. Section 1324a;

2. The Company agrees to pay a fine of $55,000 in connection with the plea agreement described in paragraph 3 below and to execute the ongoing obligations described therein;

3. The Chief Executive Officer hereby is authorized on behalf of the company to execute the plea agreement substantially in such form as reviewed by the Board at this meeting with such changes as the Chief Executive Officer may approve;

4. The Chief Executive Officer hereby is authorized on behalf of the company to execute a waiver of indictment substantially in such form as reviewed by the Board at this meeting with such changes as the Chief Executive Officer may approve;

5. The Chief Executive Officer hereby is authorized to appear before the United States District Court for the Central District of California and enter a guilty plea on behalf of the Company to the Information; and

# Exhibit-F

*Office of the Chief Counsel*

**U.S. Department of Homeland Security**
300 North Los Angeles Street
Room 8108
Los Angeles, California 90012

 **U.S. Immigration
and Customs
Enforcement**

Peter A. Schey, Esq.
11994 Chalon Road
Los Angeles, California 90049
Tel: (213) 251-3223
Fax: (310) 526-6537
peter@peterschey.com

**Re:   Wazana Brothers International, Inc., d/b/a Micro Solutions Enterprises,
LA19NR07LA0024**

Dear Mr. Schey:

The U.S. Department of Homeland Security, Immigration and Customs Enforcement
(ICE), is prepared to settle the above mentioned civil matter involving your client, Wazana
Brothers International, Inc., doing business as Micro Solutions Enterprises, for the amount of
$212,608.00. This amount is comprised of two parts. The first part of the fine is $102,608.00,
for failing to prepare, present, and/or properly complete the Employment Eligibility Verification
Form (Form I-9) on 194 occasions, in violation of section 274A of the Immigration and
Nationality Act, 8 U.S.C. section 1324a. The second part of the fine is $110,000.00, for
knowingly continuing to employ an authorized worker on 55 occasions, in violation of section
274A of the Act.

If your client accepts this offer, ICE will serve your client with a Notice of Intent to Fine
and a Final Order. Your client will then remit a $212,608.00 payment to the address set forth in
the Final Order within seven days and waive any right to appeal or otherwise challenge the fine.

EXHIBIT
F

Page 2 of 2

If your client accepts this offer, please acknowledge by signing below.  Your attention to this matter is greatly appreciated.

Sincerely,

Kristin Piepmeier
Senior Attorney

On behalf of my client, I accept the offer set forth above.

_____          _____
Date                                     Peter Schey